𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

FITCH v. COMMONWEALTH.

FEBRUARY 6, 1896.

1. CRIMINAL PLEADING—*Plea to Jurisdiction—Venue—Burden of Proof.*—
A plea in abatement, based on the ground that the offence, if com-
mitted at all, was committed beyond the jurisdiction of the court,
is not admissible. That is matter of defence under the general issue
of "not guilty." The burden is on the Commonwealth to prove that
the offence was committed within the territorial jurisdiction of the
trial court.

2. PERJURY—*Indictment—Averment of Jurisdiction Over Case in Which
Perjury Committed.*—An indictment for perjury which states the sub-
stance of the offence, in what court the oath was administered which
is charged to have been falsely taken, and avers that the court had
authority to administer the same, contains the only averments neces-
sary as to the jurisdiction of the court over the case upon the trial
of which the perjury is alleged to have been committed. Section
3993 Code; *Pickering's Case*, 8 Gratt. 628, *disapproved.*

3. PERJURY—*Indictment—Materiality of False Testimony.*—It should appear
on the face of an indictment for perjury that the false testimony
was material to the matter in issue, but it is not necessary to set
forth all the circumstances which render it material. Its materiality
may be expressly averred, or the facts which show its materiality
may be set out in the indictment.

4. PERJURY—*Indictment—Need Not Charge that Defendant Swore Posi-
tively.*—In an indictment for perjury it is not necessary to aver that
the defendant swore *positively* and *absolutely*. It is sufficient, where
one swears as he believes, thinks, or remembers, to negative the fact
that he so believed, thought, or remembered.

5. PERJURY—*Indictment—What Must be Charged—"Falsely."*—In an indict-
ment for perjury it is indispensably necessary to charge that the de-
fendant swore *falsely*. Falsity is the main ingredient of the crime.
Under the statute (section 3741 Code) it is necessary to charge that
the defendant feloniously and wilfully swore falsely, or that he felo-

niously, wilfully, and falsely swore, or to use in the place of the word *wilful* some word that is its equivalent. An indictment for perjury is not sufficient which simply charges that the defendant did "feloniously, wilfully, and corruptly depose, swear, and testify," although it concludes, whereby the defendant "did then and there, upon the said trial, in the city aforesaid, feloniously, wilfully, and corruptly swear falsely, and feloniously commit wilful perjury." The latter words are but the averment of a legal inference from what had been stated.

Error to a judgment of the Hustings Court of the city of Staunton, rendered October 21, 1895, upon the trial of an indictment for perjury, whereby the plaintiff in error was sentenced to confinement in the penitentiary for two years.

*Reversed.*

The following is a copy of the indictment upon which the plaintiff in error was tried and convicted :

" Commonwealth of Virginia, City of Staunton—to-wit :

" In the Court of Hustings for the city of Staunton, the jurors of the Commonwealth of Virginia in and for the body of the city of Staunton, and now attending the said court, upon their oaths present, that on the twenty-ninth day of March, in the year one thousand, eight hundred and ninety-five, at the said city, and within the jurisdiction of the Court of Hustings for the city of Staunton, and at the County Court held for the county of Augusta, on the 29th day of March, 1895, at the court-house of the county of Augusta, by Lyman Chalkley, judge of the said County Court, one John H. Baber was tried on an indictment for felony, to-wit, for seducing one Eliza J. Young, under promise of marriage, as more fully appears by the records of said court ; and that upon the trial of the said John H. Baber for the felony aforesaid James A. Fitch, Jr., appeared in the said court as a witness for and on behalf of the said John H. Baber, and was

then and there, in the said city, and in the County Court afore-
said, duly sworn by the said County Court, then and there
sitting upon the trial aforesaid, that the evidence he should
give upon the said trial should be the truth, the whole truth,
and nothing but the truth, the said court then and there hav-
ing authority by law to administer the said oath ; and that
upon the trial of the said John H. Baber for the felony afore-
said it then and there became material to enquire whether
Eliza J. Young was a female of previous chaste character
prior to the time of the seduction alleged in the said indict-
ment against the said John H. Baber, to-wit, on or about
the 25th day of December, 1893 ; and that thereupon the said
James A. Fitch, Jr., being so sworn as a witness, did, on the
said trial, in the city aforesaid, feloniously, wilfully, and cor-
ruptly depose, swear, and testify, among other things, that he,
the said James A. Fitch, Jr., was at a party given by one
Stuart Wagner ; that he thought that the said party was
given some time in the month of January, 1893 ; that the
said Eliza J. Young was at the said party ; that he, the said
James A. Fitch, Jr., had never met and had never seen the
said Eliza J. Young before he met and saw her at the said
party ; that he, the said James A. Fitch, Jr., danced one set
with Eliza J. Young, and asked her to allow him to have
sexual intercourse with her ; that she told him that he could,
and when the set was over he took her out on the front
porch, and there did have sexual intercourse with her, the said
Eliza J. Young ; whereas, in truth and in fact, the said James
A. Fitch, Jr., was not at the said party given by the said
Stuart Wagner some time during the month of January, 1893,
as aforesaid, and in truth and in fact the said James A.
Fitch, Jr., did not meet the said Eliza J. Young at the said
party, and in truth and in fact the said James A. Fitch, Jr.,
did not dance one set with the said Eliza J. Young, and did
not ask the said Eliza J. Young to allow him to have sexual

intercourse with her, and in truth and in fact the said James A. Fitch, Jr., did not take the said Eliza J. Young out on the front porch on the night of said party, nor on any other night, and there have sexual intercourse with her, the said Eliza J. Young; whereby the said James A. Fitch, Jr., did, then and there, upon the said trial, in the city aforesaid, feloniously, wilfully, and corruptly swear falsely, and feloniously commit wilful perjury, against the peace and dignity of the Commonwealth of Virginia."

The opinion states the case.

*Braxton & Braxton, J. H. Crosin,* and *W. E. Craig,* for the plaintiff in error.

*Attorney-General R. Taylor Scott,* for the Commonwealth.

RIELY, J., delivered the opinion of the court.

It was not error to reject the plea of the plaintiff in error to the jurisdiction of the court. A plea in abatement, based upon the ground that the offence, if committed at all, was committed beyond the jurisdiction of the court, is inadmissible. That is matter of defence under the general issue—the plea of "not guilty." The burden is just as great on the Commonwealth to prove that the offence was committed within the jurisdiction of the trial court as it is to prove the commission of the offence itself. The failure to prove either entitles the accused to an acquittal. 1 Bish. Cr. Pr., sec. 414; Trem. P. C. 271; 2 Hale P. C. 291; and *Richardson's Case,* 80 Va. 124.

It may be inferred from the plea that its object was to draw in question the right of the Hustings Court of the city of Staunton to try the accused for a crime committed in the

court of the county, although the latter court, at the time of the offence, was being held at the court-house of the county, which is in the said city, and within the territorial jurisdiction of its Hustings Court. All crimes are local, and must be tried in the court which has criminal jurisdiction over the locality where they are committed. The County Court of Augusta county would have no jurisdiction of the offence, although committed in the court, for the reason that the offence took place outside of its territorial jurisdiction over crimes. The right to try the accused rested in the Hustings Court, within whose territorial jurisdiction the crime is charged to have been committed. So, in any view, the plea was invalid and properly rejected.

One of the grounds urged in support of the demurrer to the indictment was that it does not aver that the County Court of Augusta county, in which the perjury is charged to have been committed, had jurisdiction over the case upon the trial of which the testimony alleged to be false was given.

Perjury at common law is defined to be a wilful false oath by one who, being lawfully required to depose the truth in any judicial proceeding, swears absolutely in a matter material to the point in question, whether he be believed or not. 2 Chitty on Cr. Law, 302; Hawkins's P. C., ch. 69, sec. 1; 3 Russell on Crimes, 1; 2 Bishop on Cr. Law, sec. 896; Minor's Syn. of Cr. and P., 138; and Davis's Cr. Law, 224. The oath must be administered by one having legal authority to do so, and in a judicial proceeding before a tribunal that has jurisdiction to try it; otherwise, the testimony given under the oath, although false, does not constitute the crime of perjury. 2 Bish. on Cr. L., sec. 984; and *Pickering's Case*, 8 Gratt. 628.

It is a general rule that every indictment should explicitly charge all the facts and circumstances which constitute the crime, so that the court can certainly see, on the face of the

indictment, as a question of law, afterwards, when these facts and circumstances are confessed or proved to be true, that the crime has been committed, and " behold upon the record an undoubted warrant for awarding the judgment of the law." It was, therefore, necessary in an indictment for perjury at common law to set forth the record of the cause, upon the trial whereof the perjury complained of was charged to be committed, so as to show that the oath was administered in a judicial proceeding and by lawful authority, and also to show that the tribunal wherein the cause was tried had jurisdiction over it. The jurisdiction of the tribunal must have been made to appear from the facts stated in the indictment, or the jurisdiction be expressly averred. This was indispensable. *Pickering's Case, supra; King* v. *Dowlin,* 5 Term 311, and *State* v. *Gallimore,* 2 Iredell 372.

These requirements caused indictments for perjury at common law to be set forth with much detail and great prolixity, resulting often, by reason of inaccuracies, in the acquittal of guilty parties upon mere technicalities and without regard to the merits of the case. To obviate these difficulties and simplify indictments for perjury, the following statute was enacted in the time of George the Second (Geo. II., ch. 23, sec. 11):

" In every information or indictment to be prosecuted against any person for wilful and corrupt perjury, it shall be sufficient to set forth the substance of the offence charged upon the defendant, and by what court or before whom the oath was taken (averring such court or person or persons to have competent authority to administer the same), together with the proper averment or averments to falsify the matter or matters wherein the perjury or perjuries is or are assigned; without setting forth the bill, answer, information, indictment, declaration, or any part of any record or proceeding, either in law or equity, other than as aforesaid; and without set-

ting forth the commission or authority of the court or person or persons before whom the perjury was committed; any law, usage, or custom to the contrary notwithstanding."

The effect of this statute was to dispense with the necessity of setting out the record or the facts to show the jurisdiction of the tribunal, or of alleging in terms that it had jurisdiction over the cause or proceeding in which the false testimony was given. It was thereafter held by the courts of England to be sufficient to set forth the substance of the offence, and the name of the court before which the oath was taken, to aver that it had competent authority to administer the same, and to falsify by proper averments the defendant's assertions. 3 Russell on Crimes, 59; 2 Chitty on Cr. Law, 287; Archbold's Cr. Pl. and Pr. 1719; *Lavey* v. *The Queen*, 79 E. C. L. 496; and 2 Bishop on Cr. Pr., sec. 914.

Many of the States have enacted the same or a like statute, and the same effect has been given to it by their courts as was done by the courts of England. 2 Bish. Cr. Pr., sec. 848. See also *The People* v. *Phelps*, 5 Wend. 9; *Campbell* v. *People*, 8 Wend. 636; *Commonwealth* v. *Knight*, 12 Mass. 274; *State* v. *Ledford*, 6 Ired. 5; *State* v. *Davis*, 69 N. C. 495; and *State* v. *Stillman*, 7 Cold. 345.

The State of North Carolina, in 1791, enacted a statute into which was incorporated the provisions of the statute of 23 Geo. II., but it ceased for a short time to be a part of the statute law of that State, in consequence of being omitted from their Revised Statutes through inadvertence or misapprehension. During the period of its suspension the case of the *State* v. *Gallimore*, 2 Iredell 372, came before the court. The same objection that is made to the indictment in this case was made to the indictment in that, and sustained; but Judge Gaston, in commenting on the statute, said: "The principal effect of this enactment was to substitute in the indictment the general averment of a competent authority to

administer the oath, in the place of a specific averment of the
facts showing such authority, and to make the question
whether the oath was or was not taken before a competent
jurisdiction a compound question of law and fact, to be de-
cided by the petit jury under the advice of the court.   Since
that act, the compendious form thereby authorized has gene-
rally been adopted, and if that act were yet in force we should
have no difficulty in overruling the objection to this in-
dictment."

The statute of 23 Geo. II. was enacted too late to become
a part of the laws we inherited from England (sections 2 and 3
of Code of Virginia), and was never in force in this State.
Consequently, when the case of *Lodge*, 2 Gratt. 580, was
decided, it was held that an indictment for perjury must still
conform to the requirements of the common law.   But on
January 16, 1846, the General Assembly enacted substan-
tially, and in almost identical words, the English statute,
which has ever since been in force here, and now constitutes
section 3993 of the Code.   In adopting the English statute,
it is to be taken that there was adopted along with it the
interpretation put upon it by the courts of England.   It
follows, therefore, that it is now unnecessary in this State to
set forth the record of the case upon the trial whereof the
false testimony was given, or to aver the jurisdiction of the
tribunal over it; but only necessary, instead thereof, " to state
the substance of the offence charged against the accused, in
what court or by whom the oath was administered which is
charged to have been falsely taken, and to aver that such
court or person had competent authority to administer the
same, together with proper averments to falsify the matter
wherein the perjury is assigned."

With these requirements of the statute, in respect to the
matter complained of, the indictment in this case fully com-
plies.   It states the substance of the offence, in what court

the oath was administered, and avers that it had authority to administer the same.    We ought not to require more than the words of the Legislature have made necessary.

The case of *Pickering, supra,* was relied upon with great confidence by the counsel of the plaintiff in error to establish the doctrine that it is still necessary, in this State, to aver in the indictment that the court had jurisdiction of the case upon the trial whereof the alleged perjury was committed, or to state the facts showing such jurisdiction.    That case was decided after the enactment of the statute of January 16, 1846, cited above, and it was there unquestionably so held, as is contended.    But it will be observed that the statute is not at all adverted to in the opinion of the court, and it is fair to presume that it was not brought to its attention, and escaped its consideration.    The effect of such a statute upon an indictment for perjury, according to the uniform interpretation put upon similar statutes by the highest courts of this country and of England, is too well established to doubt that, if the Virginia statute had been considered, the decision in *Pickering's Case* would have been different.    In any event, we are unable to follow it, in the face of our statute, but must hold that, under its provisions, it is now unnecessary to set forth, in an indictment for perjury, the facts necessary to show the jurisdiction of the court over the case upon the trial whereof the alleged perjury was committed, or expressly to aver it.

It was further urged in support of the demurrer that the indictment fails to show the materiality of the evidence of the defendant which is charged to have been false.

It is undoubtedly necessary that it should appear on the face of the indictment that the false testimony was material to the matter in issue, but it is not requisite to set forth all the circumstances which render it material.    Its materiality may be expressly averred, or the facts may be set out so as to show its materiality.    2 Bish. on Cr. Pr. 854 ; 2 Chitty on

Cr. Law, 309; 2 Archbold's Cr. Pr. & Pl. 1731; *Common-wealth* v. *Knight*, 12 Mass. 274.

The indictment; after setting out the matter that was in issue, that one John H. Baber was being tried for seducing, on or about December 25, 1893, a certain Eliza J. Young, under promise of marriage, avers that upon the said trial it became material to inquire whether she was a female of pre-vious chaste character, and that thereupon the defendant, being sworn as a witness, testified that he was at a certain party, given, he thought, in the month of January, 1893; that he there met the said Eliza J. Young, and danced with her; and afterwards, at a certain place at the house where the party was given, had sexual intercourse with her; the truth of each of which statements the indictment specifically and expressly negatives. The materiality of the false evi-dence is sufficiently averred; and this objection to the indict-ment is also not well founded. *King* v. *Dowlin*, 5 Term R. 318; *Regina* v. *Bennett*, 20 Law J., at p. 217; *Regina* v. *Gardner*, 8 Car. & P. 737; *State* v. *Davis*, 69 N. C. 495, and *State* v. *Sleeper*, 37 Vt. 126.

It is also insisted that the indictment is defective in that it does not charge that the defendant swore positively or abso-lutely at what time the party referred to took place, but simply avers that he *thought* it was some time in the month of January, 1893. It is not necessary that he should have sworn positively or absolutely in order to commit perjury, but, as was said by Lord Mansfield, in *Pedley's Case*, 1 Leach 325, " a man may be indicted for perjury in swearing that he *believes* a fact to be true which he must know to be false." In *Regina* v. *Schlesinger*, 10 Q. B. 670, an indictment for per-jury was sustained where the defendant swore that he *thought* that certain words written in red ink were not his writing. But in all such cases, where one swears a thing according as he *thinks, remembers, or believes*, it is proper to negative the

fact that he so thought, believed, or remembered. 2 Bishop on Cr. Pr., sec. 862.

It was further argued in support of the demurrer that the indictment was fatally defective because it does not charge that the defendant swore *falsely.*

Falsity is the main ingredient of the crime of perjury, and the charge that he swore *falsely* cannot be dispensed with. Chitty on Cr. Law, 309; 3 Russell on Crimes, 53. In *Rex* v. *Perrott*, 2 M. & S. 392, Dampier, J., said : " Upon every indictment for perjury which I have ever seen, it has always been alleged that the defendant falsely swore, &c." In *Regina* v. *Oxley*, 3 Car. & K. 317, it was held that an indictment which charges that the prisoner " feloniously, corruptly, knowingly, wilfully, and maliciously swore," omitting the word " falsely," but concluding " and so the defendant, in manner and form aforesaid, did commit wilful and corrupt perjury," is bad. And so, in *Juaraqui* v. *State*, 28 Texas 625, Judge Wheeler, speaking for the court, said : " We think the indictment insufficient, in that it does not aver that the defendant swore falsely."

The present statute of this State on perjury is as follows :

" If any person, to whom an oath is lawfully administered on any occasion, wilfully swear falsely on such occasion touching any material matter or thing, or if a person falsely make oath that any other person is twenty-one years of age, in order to obtain a marriage license, he shall be guilty of perjury." (Code of Va., sec. 3741.)

Under this statute, it would be necessary to charge that the defendant feloniously and wilfully swore falsely, or that he feloniously, wilfully, and falsely swore, or to use in the place of " *wilful* " some word that is the equivalent of it.

In *Thomas* v. *Commonwealth*, 2 Rob. 795, the charge in the indictment was that the defendant " did depose and give evidence to the said grand jury in substance and to the effect following, to-wit " ; what he stated is next given, and then

follows the allegation, "which said evidence given to the grand jury was wilfully false and corrupt." Judge Field, in delivering the opinion of the court, said : "Whether we regard the indictment in this case as an indictment for perjury at common law, or for perjury under the Virginia statute, 1 Rev. Code, ch. 148, sec. 1, p. 571," (which then was : "If any person shall wilfully, corruptly, and falsely swear,") "we are unanimously of opinion that it is defective in not setting forth the crime of perjury with sufficient direct and positive averments. An indictment upon the statute should aver that the defendant did 'wilfully, corruptly, and falsely' swear or affirm, as the case may be."

The indictment in the case at bar simply charges that the defendant did "feloniously, wilfully, and corruptly depose, swear, and testify." It omits altogether that he *falsely* swore. The language of Russell on Crimes, Vol. III., p. 53, is here most apt : "Where an indictment for perjury alleged that the prisoner 'feloniously' swore to the matter on which the perjury was assigned, instead of 'falsely,' it was held that the indictment was bad in substance, and that the words 'corruptly, knowingly, wilfully, and materially' did not supply the defect : a man might swear 'corruptly' under some corrupt influence, and yet swear the truth; so with respect to the word 'knowingly'; and he might swear 'wilfully and maliciously' to gratify some malicious feeling, but yet it might not be 'falsely.'"

The indictment, after contradicting the truth of the testimony alleged to have been given by the defendant, concludes as follows : "Whereby the said James A. Fitch, Jr., did then and there, upon the said trial, in the city aforesaid, feloniously, wilfully, and corruptly swear falsely, and feloniously commit wilful perjury." But this averment cannot supply the omission of the word "falsely" in the charging part of the indictment, for this is but the averment of a legal infer-

ence or conclusion of law from what has been stated, and not the averment of a distinct fact.   It is the province of the indictors to state facts, and leave legal inferences and conclusions of law to the court.   1 Bish. on Cr. Pr. 329 ; Vol. II., sec. 903 ; 2 Chitty on Cr. Law, 291 ; 3 Russell on Crimes, 53 ; and *Juaraqui* v. *State, supra.*

For this defect the demurrer to the indictment should have been sustained.   This result renders it unnecessary to consider the other assignments of error, all of which relate to subsequent rulings of the court made upon the trial of the case.

The judgment of the Hustings Court, for the error aforesaid, must, therefore, be reversed and annulled, and an order entered sustaining the demurrer to the indictment and dismissing the same, but without prejudice to the right to renew the prosecution by the finding of another and proper indictment.

*Reversed.*