UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judges Russell and AtLee
Argued at Richmond, Virginia


TARSHA M. GERALD

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1967-15-2                CHIEF JUDGE GLEN A. HUFF
                                                    DECEMBER 27, 2016
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                              Cheryl V. Higgins, Judge

          Norman H. Lamson for appellant.

          Christopher P. Schandevel, Assistant Attorney General (Mark R.
          Herring, Attorney General, on brief), for appellee.


          Tarsha M. Gerald ("appellant") appeals her convictions of driving on a suspended

license, third offense, in violation of Code § 46.2-301, and perjury, in violation of Code

§ 18.2-434.  After her conviction for driving on a suspended license, third offense, in the

Albemarle County General District Court, a grand jury indicted appellant for perjury.  Appellant

appealed the driving on a suspended license conviction to the Albemarle County Circuit Court

("trial court"), which, following a bench trial on both charges, convicted appellant for driving on

a suspended license, third offense, and for committing perjury in the general district court.  The

trial court sentenced appellant to one year's imprisonment with all but four months suspended for

the driving on a suspended license conviction and five years' imprisonment with all but three

months suspended for the perjury conviction, for a total active sentence of seven months.  On

appeal, appellant challenges the sufficiency of the evidence as to the driving on a suspended

---

          * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

license and perjury charges and contends that the trial court was an improper venue for the perjury trial. For the following reasons, this Court affirms the convictions.

I.  BACKGROUND

On appeal, "we consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial." Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (*en banc*) (quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)).  So viewed, the evidence is as follows.

Between 3:00 and 4:00 p.m. on May 26, 2013, a Mercedes rear-ended a Toyota driven by Paul Welch ("Welch") while he waited for a traffic signal on Ivy Road in Albemarle County. Welch "immediately" opened his door to exit his car and saw in his mirror the Mercedes's driver stepping out of the driver's side. Welch identified the driver as Patricia Gerald ("Patricia"). Welch walked to the passenger side of the Mercedes, and appellant—Patricia's daughter— stepped out of the front passenger side of the vehicle. The only other person Welch observed in the Mercedes was a woman in the backseat who did not leave the car. Appellant identified herself as the car's owner and gave Welch a piece of paper with her contact information, insurance company, and license plate number. Appellant had only a state-issued identification card and did not show Welch a driver's license.

Welch then asked to see the license belonging to the car's driver, Patricia. At that point, the two women switched sides—according to Welch, appellant "ran around to the driver's side, hopped in the car, and [Patricia] got in the passenger seat, and they sped off." Welch followed the Mercedes long enough to confirm that the license plate number appellant gave him was accurate and then called police.

Albemarle County Police Officer Ralph Scopelliti ("Scopelliti") responded to the scene and, based on his conversation with Welch, radioed information about the incident to dispatch. Officer Carl Scott Miller ("Miller") heard Scopelliti's call and then traveled to an address associated with the Mercedes provided by dispatch. On arrival, he located the car, appellant, and Patricia. After questioning Patricia, Miller asked appellant whether she had driven the vehicle. Appellant told Miller "that she was not driving the vehicle when the crash occurred, but her mother was very upset after the crash and so she drove the vehicle home." Appellant stated that she had not previously told Miller that she drove the car away from the accident scene because her license had been suspended. Miller later confirmed that both Patricia and appellant had suspended licenses.

During the investigation, Scopelliti called a phone number provided by Miller in order to follow up with the two women. Scopelliti identified himself, and then asked if he was speaking with appellant. Appellant replied "yes." Scopelliti then asked her whether "she was involved in an accident," and appellant replied "yes." Scopelliti asked her next "if she drove off after the accident," and appellant replied "yes." Scopelliti asked her "if she had a valid driver's license," and appellant again replied "yes."[1]

Based on the investigation, both appellant and Patricia were charged with driving on a suspended license in violation of Code § 46.2-301. The joint trial of appellant and Patricia as codefendants took place in Albemarle County General District Court on October 8, 2013. The general district court judge administered oaths to appellant, Patricia, and the Commonwealth's witnesses before the trial began. Both appellant and Patricia testified in their own defense.

---

[1] After speaking with appellant, Scopelliti also similarly questioned Patricia over the telephone.

- 3 -

Because there was no record of the general district court proceedings, during the later circuit court proceedings the Commonwealth relied on Scopelliti's testimony to establish the events of the general district court trial. His testimony established that, on direct examination, both appellant and Patricia denied driving. During the general district court trial, the Commonwealth's attorney had read from Miller's investigation notes, which contained the questions he asked appellant and Patricia during the investigation, in order to ask the codefendants those same questions on cross-examination. Scopelliti had an identical copy of Miller's notes on which he had recorded what questions the Commonwealth's attorney had asked appellant.

Specifically, the Commonwealth's attorney had first asked appellant "if she told Officer Miller that she drove the car home because her mother was too upset and could not drive, and she said no." The Commonwealth's attorney then had asked appellant whether she said anything to Miller about her license being suspended, and again appellant said "no." After cross-examining both appellant and Patricia, the Commonwealth had asked the codefendants if they understood they were under oath, and both independently answered that they understood they were under oath and they had told the truth on cross-examination.

The general district court found both appellant and Patricia guilty of driving on suspended licenses, and both appealed their convictions to the circuit court where they were tried jointly for the original driving on a suspended license charges as well as for committing perjury during the general district court trial.

Following the close of the Commonwealth's evidence during the circuit court trial, which included the testimony of Welch, Miller, and Scopelliti, appellant testified in her own defense. According to appellant, she, Patricia, Patricia's boyfriend Aaron Alexander, appellant's two children, and a woman named Bianca "Tiffany" Horne ("Horne") drove to Waynesboro in the

- 4 -

Mercedes on May 26, 2013 to buy groceries. Appellant testified that Horne drove to and from Waynesboro, and was driving when the Mercedes struck Welch's Toyota. She further testified that after she gave Welch her contact and insurance information, Welch told her she could leave so Horne drove them back to appellant's apartment. Appellant testified that she remembered speaking with Miller at her apartment and that when he asked her for her driver's license, she gave him her state identification. She denied ever speaking to Scopelliti and further denied giving false testimony about the matter in the general district court trial.

Called as a defense witness on December 1, 2014, Horne testified that she had known appellant for "five months . . . or a year." When counsel for appellant asked Horne to clarify how she knew appellant on May 26, 2013 when she had just testified that she had known appellant for only a year, Horne replied: "I—I met her in Waynesboro." She further testified that when she was driving back from Waynesboro, only appellant was in the car with her. When asked whether she was present when an automobile accident occurred on May 26, 2013, Horne replied: "I was a licensed driver coming back from Waynesboro back to Charlottesville, and I plead the Fifth." The defense also called Aaron Alexander, who testified that he was in pain due to back problems and noted that he was asleep in the backseat during the incident. He identified Horne as the driver after initially referring to her as "whatyoucallum," and testified that he did not know Horne's last name. Although called to the stand, Patricia invoked her Fifth Amendment right against self-incrimination and refused to testify.

During the trial, appellant's counsel objected to venue on the basis that the Albemarle County General District Court is located in the City of Charlottesville, not Albemarle County, and thus the trial court was an improper venue for appellant's perjury trial. The trial court determined that the parties would "finish the case except for the issue with regards to venue," which it granted the parties leave to brief. Appellant moved to strike at the close of the

- 5 -

Commonwealth's evidence and renewed that motion at the close of all evidence. Appellant contended that the Commonwealth failed to present sufficient evidence to establish that the allegedly perjurious testimony concerned a material issue, that the evidence did not sufficiently corroborate the falsity of appellant's statement, and that Welch's testimony was insufficient because he was interested in the prosecution. The Court denied the motions to strike and continued the case for closing argument following receipt of the venue briefs.

The trial reconvened for closing arguments on February 24, 2015 after the parties filed their venue briefs. Appellant argued that, under the City of Charlottesville's charter, property owned by Albemarle County within the City of Charlottesville is subject to the "joint jurisdiction" of the city and county. Appellant distinguished "concurrent jurisdiction" from "joint jurisdiction," which appellant argued would require city and county officers to act in concert to conduct a prosecution, and concluded that under the charter Albemarle County could not "act unilaterally to do a criminal prosecution" for crimes committed in the county courthouse. The trial court ruled that, although the courthouse is within the City of Charlottesville's limits, the phrase "joint jurisdiction" implied that "the jurisdiction is shared, and it doesn't mean that they have to act together."

Ultimately, the trial court concluded that the Commonwealth proved venue was proper, then went on to convict appellant of driving on a suspended license and committing perjury in the general district court. The trial court noted that it gave Welch's testimony "great weight" in light of his testimony's detail and the lack of anything "in cross-examination that really attacked or took away from [his] credibility." The trial court noted appellant's statements to Miller were corroborated by the testimony of Welch and Scopelliti, and it additionally observed that "whether or not one is driving at the time of an accident seems to be a singular significant

event."  The trial court declined to find the defense witnesses' accounts credible, finding that

"there are too many discrepancies in the testimony between [appellant] and the other witnesses."

Appellant subsequently filed motions to reconsider the venue and sufficiency issues,

which the trial court denied.  This appeal followed.

## II.  STANDARD OF REVIEW

Our standard for reviewing the sufficiency of the evidence is firmly established:

> [W]hen the sufficiency of the evidence is challenged on appeal, the evidence and all reasonable inferences fairly drawn therefrom must be viewed in the light most favorable to the Commonwealth.  The trial court's judgment should be affirmed unless it appears that it is plainly wrong or without evidence to support it.

Spencer v. Commonwealth, 238 Va. 275, 283, 384 S.E.2d 775, 779 (1989) (citations omitted).

Under this familiar standard of review, "[a]n appellate court does not 'ask itself whether *it*

believes that the evidence at the trial established guilt beyond a reasonable doubt.'"  Williams v.

Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia,

443 U.S. 307, 318-19 (1979)).  "Rather, the relevant question is whether '*any* rational trier of

fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Id.

Thus, this standard "gives full play to the responsibility of the trier of fact fairly to resolve

conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic

facts to ultimate facts."  Jackson, 443 U.S. at 319.

"In its review, this Court will give deference to the trial court's findings of fact, but

review the trial court's 'statutory interpretations and legal conclusions *de novo*.'"  Wallace v.

Commonwealth, 65 Va. App. 80, 88, 774 S.E.2d 482, 486 (2015) (quoting Brown v.

Commonwealth, 57 Va. App. 381, 390, 702 S.E.2d 582, 586 (2010)).

III. ANALYSIS

Appellant raises three assignments of error in this appeal:

1. The trial court erred by denying [appellant's] motion to strike the evidence, renewed after presentation of defense evidence, because the Commonwealth failed to prove the questions propounded to [appellant] to which her answers were allegedly perjurious.

2. The trial court erred by overruling [appellant's] objection to venue of the Albemarle Court House, site of the alleged perjury, as being, not in Albemarle County, but as being in the City of Charlottesville.

3. The trial court erred in denying the motion to strike the evidence, renewed after the completion of all evidence on the grounds the evidence was insufficient as a matter of law because the testimony of Commonwealth witness Paul Welch that [appellant] was driving was inherently incredible.

A. Perjury

Appellant first contends that the trial court erred in finding the evidence was sufficient to convict her of perjury in violation of Code § 18.2-434. Specifically, appellant argues that because the Commonwealth did not prove what questions were asked to appellant that elicited allegedly perjurious responses, the evidence did not rise to the high quantum of proof necessary to sustain a perjury conviction. Appellant's argument is without merit.

"The common law crime of perjury is codified at Code § 18.2-434." Williams v. Commonwealth, 8 Va. App. 336, 339, 381 S.E.2d 361, 363 (1989). Code § 18.2-434 provides in pertinent part: "If any person to whom an oath is lawfully administered on any occasion willfully swears falsely on such occasion touching any material matter or thing . . . he is guilty of perjury, punishable as a Class 5 felony." "[I]n order to sustain a perjury conviction under this statute, the Commonwealth [bears] the burden of proving: (1) that an oath was lawfully administered; (2) that the defendant wilfully swore falsely; and (3) that the facts to which he

- 8 -

falsely swore were material to a proper matter of inquiry." Mendez v. Commonwealth, 220 Va. 97, 102, 255 S.E.2d 533, 535 (1979).  To be material, the testimony at issue "must have been relevant in the trial of the case, either to the main issue or some collateral issue." Holz v. Commonwealth, 220 Va. 876, 881, 263 S.E.2d 426, 429 (1980).  Additionally, sustaining "a perjury conviction under Code § 18.2-434 requires proof of falsity from the testimony of at least two witnesses or other corroborating evidence of falsity in the event the case is supported by the testimony of only one witness." Keffer v. Commonwealth, 12 Va. App. 545, 549, 404 S.E.2d 745, 747 (1991).

The allegedly perjurious statements at issue are appellant's denials before the general district court that she drove from the scene of the accident to her apartment and that she told Miller about her suspended license.  Appellant does not contest that she was under oath when she testified at the general district court trial, a fact apparent from the record.  The materiality of her testimony is likewise evident.  Appellant was tried in general district court for driving a motor vehicle while her license was suspended, and her statements concern whether she was driving and whether her license was suspended at the time—both of which are issues "relevant in the trial of the case." Holz, 220 Va. at 881, 263 S.E.2d at 429.  Finally, the Commonwealth satisfied its burden of establishing the falsity of the statements through sufficient corroborating evidence.

Welch's testimony established that appellant drove away from the scene of the accident; however, because a perjury conviction "requires proof of falsity from the testimony of at least two witnesses or other corroborating evidence of falsity," Keffer, 12 Va. App. at 549, 404 S.E.2d at 747, the Commonwealth was required to produce an additional witness or other corroborating evidence to sustain its burden.  It did so here through the introduction of appellant's out of court confessions on two occasions to different officers who she knew were investigating the accident.

- 9 -

Miller testified that appellant told him "she was not driving the vehicle when the crash occurred, but her mother was very upset after the crash and so she drove the vehicle home," a statement consistent with Welch's testimony. Furthermore, with respect to her license suspension, Miller additionally testified that appellant told him she had not admitted to driving away from the scene earlier in the investigation because her license was suspended. Additionally, Scopelliti testified that appellant told him that "she drove off after the accident," a statement consistent with the accounts of both Welch and Miller.

Although she was not under oath when she spoke to the two officers, the fact that, knowing her privilege to drive had been suspended, she confirmed for investigating officers that she had in fact driven sufficiently corroborates Welch's testimony for a conviction under Code § 18.2-434. The trial court's conclusion draws further support from its evaluation of appellant's testimony in her own defense, which gave the trial court the opportunity to assess her credibility and believe or disbelieve it accordingly. See Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998) ("In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt."). Further, when a perjury defendant takes the stand, "corroboration sufficient to satisfy the jury of the falsity of the oath may well arise from his demeanor and manner of testifying." Goins v. United States, 99 F.2d 147, 150 (4th Cir. 1938). Each element of perjury was thus established by the evidence.

Nonetheless, appellant contends that the perjury conviction cannot stand because the Commonwealth "fail[ed] to prove the questions to which the answers were allegedly perjurious." Counsel for appellant concedes that he "has been unable to locate any Virginia appellate precedents discussing the precise issue" of whether proof of the questions' wording is necessary, instead relying on persuasive case law from other jurisdictions in arguing that the evidence of

- 10 -

appellant's perjury was thus insufficient. Even were such proof required under Virginia law, the evidence viewed in the light most favorable to the Commonwealth demonstrates that the Commonwealth adequately established the questions that elicited appellant's perjurious answers.

Scopelliti testified that he took "very specific notes" of the questions the Commonwealth asked appellant during the October 8, 2013 general district court trial, saying that he was "keeping track of what was asked and what was answered." Specifically, Scopelliti testified that "[a]s the Commonwealth asked questions, she was reading from Officer Miller's notes, and [Scopelliti] had the same notes as Officer Miller," on which he underlined the exact questions as the Commonwealth's attorney asked them. To clarify the process, counsel for Patricia asked Scopelliti: "So what you were doing is you were recording the questions asked?," to which Scopelliti replied, "On the piece of paper, yes." Further, as recorded above, Scopelliti articulated the questions asked during the general district court trial with a great degree of specificity during his circuit court testimony.

Appellant further argues that because Scopelliti's recitation of the questions did not expressly mention such details as the date of the incident or where the incident occurred, the evidence was insufficient to convict appellant of perjury because she could have been truthfully denying driving or discussing her license at another time. This argument fails because both questions specifically mentioned appellant speaking with Miller, and appellant testified that she had "never before" had contact with Miller prior to him questioning her at her apartment after the May 26, 2013 accident. Appellant emphasizes that "we must know the context immediately preceding and following" the questions eliciting perjurious responses, citing People v. Wills, 347 N.E.2d 188, 192 (Ill. 1978), for support. The context of the questions at issue here was a general district court trial involving the May 26, 2013 Albemarle County car accident, and therefore all questions asked contemplated the events of that day. "[T]he Commonwealth need only exclude

- 11 -

reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993). To the extent that appellant argues her denials were truthful in that she was referring to another date or location, the trial court properly rejected that hypothesis of innocence because it did not "flow from the evidence," and the Commonwealth has no burden to disprove any fantastic hypothesis posited by appellant. Id.

Accordingly, the trial court's decision to convict appellant of perjury was not plainly wrong and was supported by competent evidence.

### B. Venue

In her second assignment of error, appellant contends that the trial court erred in concluding that Albemarle County was a proper venue for trial of an offense committed in the Albemarle County General District Court. Specifically, appellant argues that because the Albemarle County General District Court is located in the Albemarle County Courthouse, which is situated within the City of Charlottesville, the trial court was an improper venue for appellant's perjury trial. This Court disagrees.

Code § 19.2-244, the statute governing venue in criminal prosecutions, states in part: "*Except as otherwise provided by law*, the prosecution of a criminal case shall be had in the county or city in which the offense was committed." (Emphasis added). The Commonwealth bears the burden of proving venue by direct or circumstantial evidence, and a "criminal charge cannot be sustained unless the evidence furnishes the foundation for a 'strong presumption' that the offense was committed within the jurisdiction of the court." Keesee v. Commonwealth, 216 Va. 174, 175, 217 S.E.2d 808, 809-10 (1975) (quoting Harding v. Commonwealth, 132 Va. 543, 548, 110 S.E. 376, 378 (1922)).

Neither party disputes that appellant's perjury took place within the Albemarle County Courthouse or that the Albemarle County Courthouse is located within the bounds of the City of Charlottesville. Without more, these facts would indicate that the Circuit Court of the City of Charlottesville is the proper venue for the perjury prosecution under Code § 19.2-244. That statute, however, contains an important proviso—"[e]xcept as otherwise provided by law." Here, the charter of the City of Charlottesville, as amended, contains additional provisions affecting venue, and it is the proper interpretation of these provisions that determines this issue.

In 1888, the General Assembly enacted a statute rechartering the Town of Charlottesville as a city. 1888 Va. Acts 411-417. The statute did not include language carving out the Albemarle County Courthouse and its lands as remaining part of Albemarle County, thus drawing into question whether the courthouse was subject to county or city jurisdiction. 1888 Va. Acts 411-417. Perhaps recognizing this ambiguity, the General Assembly included language stating: "The property now belonging to the county of Albemarle within the limits of the city of Charlottesville, shall be subject to the joint jurisdiction of the county and city authorities, and shall not be subject to taxation by the authorities of either county or city." 1888 Va. Acts 415. The following section of the statute clarified that "the courthouse and jail and their respective lots and other buildings thereon" were among the "property" subject to joint jurisdiction. 1888 Va. Acts 416.

This language has remained substantially similar in every subsequent version of the statute. See, e.g., 1908 Va. Acts 442, 455-56 (repealing and replacing 1900 version of act creating a new charter for the City of Charlottesville and providing that "[t]he property now belonging to the county of Albemarle within the limits of the city of Charlottesville, shall be within and subject to the joint jurisdiction of the county and city authorities and officers, and shall not be subject to taxation by the authorities of either county or city . . ."); see also 1900 Va.

- 13 -

Acts 1142; 1946 Va. Acts 746. The present version of the City of Charlottesville charter states:

"The property now belonging to the County of Albemarle within the limits of the City of

Charlottesville shall be within and subject to the joint jurisdiction of the county and city

authorities and officers, and shall not be subject to taxation by the authorities of either county or

city . . . ." Charlottesville, Va. Code of Ordinances § 48 (2016). This provision remains

unchanged from the language of the 1946 Act.

The issue in this assignment of error turns on the meaning of "joint jurisdiction" as used

in the charter. "Jurisdiction" and "venue" are related, but distinct, concepts. To affect the

outcome of this case, the joint jurisdiction at issue must affect venue for criminal cases arising on

property subject to that joint jurisdiction. This Court can conclude from the charter provision's

language that its grant of "joint jurisdiction" necessarily implies such an effect on venue. As

appellant concedes on brief, "the word 'jurisdiction' [generally] refers to courts." See

Jurisdiction, Black's Law Dictionary (10th ed. 2014) (defining "jurisdiction" as "a government's

general power to exercise authority over all persons and things within its territory," "a court's

power to decide a case or issue a decree," and "a geographic area within which political or

judicial authority may be exercised"). To grant the county the power to exercise authority over

county property located within the city, but deny county courts authority to decide cases arising

from the county's power over that property is to render the contemplated grant of jurisdiction a

nullity. The charter provision need not specifically mention its effect on venue for criminal

prosecutions because that effect is a corollary of the grant of joint jurisdiction: for a court to

exercise its granted jurisdiction over actions arising on the property, that court must also be a

proper venue for such actions.

Having concluded that the charter's grant of "joint jurisdiction" affects venue for crimes

occurring on property subject to the joint jurisdiction, this Court now addresses appellant's

- 14 -

contention that the joint jurisdiction shared by the "county and city authorities" requires mutual, united action by Albemarle and Charlottesville officials to prosecute cases arising in the Albemarle courthouse.  Appellant argues that such joint jurisdiction is distinct from concurrent jurisdiction, which is "jurisdiction exercised by different courts, at the same time, over the same subject-matter, and within the same territory, and wherein litigants may, in the first instance, resort to either court indifferently."  Murray v. Roanoke, 192 Va. 321, 327, 64 S.E.2d 804, 808 (1951).  This argument is without merit.

Courts throughout the country have used the words "joint" and "concurrent" interchangeably when addressing similar situations in which two governing bodies share a grant of jurisdiction.  See, e.g., In re Estate of Cassidy, 313 A.2d 435, 438 (Me. 1973) ("Concurrent jurisdiction means joint and equal jurisdiction."); State v. King, 142 N.E.2d 222, 225 (Ohio 1957) ("Jurisdiction, as here used, means the authority to hear and determine a cause.  Concurrent, as here used, means that which is joint and equal in authority. . . . 'Concurrent' . . . means a court having the same authority to hear and determine causes of like nature to that which is then charged against one accused of an offense."); Commonwealth v. Fels, 428 A.2d 657, 659 (Pa. Super. 1981) (using "joint" and "concurrent" interchangeably); see also, e.g., N. Shore Boom & Driving Co. v. Nicomen Boom Co., 212 U.S. 406, 412 (1909) ("Where there is a Federal law which it is claimed also applies to the subject and requires the consent of the Federal Government, then there is a concurrent or joint jurisdiction of the state and National governments . . . .").  Dictionaries in common use further demonstrate the commonality of the two words.  See, e.g., Joint, Black's Law Dictionary, supra, (defining "joint" when used "of a thing" as "common to or shared by two or more persons or entities" and when used "of a person or entity" as "combined, united, or sharing with another"); Joint, Webster's Third New

International Dictionary (2002) (defining "joint" as, among other things, "shared by or affecting two or more").

Because "joint jurisdiction" and "concurrent jurisdiction" are functionally synonymous as evidenced by their frequent interchangeable use in this context, the issue before this Court does not turn on which adjective precedes "jurisdiction" in the charter's language. Instead, this Court must look to the *exercise* of jurisdiction contemplated by the charter to determine whether the joint jurisdiction must be exercised by both jurisdictions simultaneously or whether the city and county merely share joint authority to exercise jurisdiction.

Joint or concurrent jurisdiction granted to governing authorities, "to be of value to the respective [authorities] or to any one, must have a practical application." J.S. Keator Lumber Co. v. St. Croix Boom Corp., 38 N.W. 529, 543 (Wis. 1888). If the charter required the city and county to act jointly in criminal prosecutions arising in the Albemarle County Courthouse, a city and county grand jury would have to meet together and issue a joint indictment; city and county Commonwealth's attorneys would have to appear jointly and prosecute the case together; and city and county judges would have to decide jointly to convict a defendant. As appellant observes on brief, "[a]ll of this is in impracticability." Because "[t]he plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction," Commonwealth v. Zamani, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998), and statutes should be construed so as to avoid an absurd result, Ford Motor Co. v. Gordon, 281 Va. 543, 549-50, 708 S.E.2d 846, 850 (2011), this Court finds that the "joint jurisdiction" contemplated by the charter grants either the city or the county authority to prosecute offenses taking place within the Albemarle County Courthouse.

Notwithstanding, appellant argues that Fitch v. Commonwealth, 92 Va. 824, 14 S.E. 272 (1896), necessitates the conclusion that venue was improper. In that case, the Supreme Court

- 16 -

addressed where venue was proper when the defendant committed perjury in the Augusta County Courthouse. The courthouse was located entirely within the Staunton city limits, and thus was "within the territorial jurisdiction of [Staunton's] Hustings Court." Id. at 828, 14 S.E. at 273. Accordingly, the Supreme Court concluded that "[t]he County Court of Augusta county would have no jurisdiction of the offence, although committed in the court, for the reason that the offence took place outside of its territorial jurisdiction over crimes." Id. Although the facts in Fitch are analogous, that case is nonetheless distinguishable from the case at bar because no statutory authority or other legal provision existed at the time granting Augusta County shared jurisdiction over crimes committed on county property located within Staunton city limits. Such would be the result in the case at bar but for the charter provision granting the City of Charlottesville and Albemarle County "joint jurisdiction" over county property located within city limits. That provision coincides with the "otherwise provided by law" caveat in Code § 19.2-244 and makes the Albemarle County Circuit Court a proper venue for perjury committed inside the Albemarle County Courthouse.

Accordingly, because the General Assembly's broad grant of "joint jurisdiction" in the charter encompasses the authority exercised by the trial court here in trying appellant for perjury, this Court affirms the trial court's ruling that the Albemarle County Circuit Court was a proper venue for appellant's perjury trial.

### C. Driving on a suspended license

In her third assignment of error, appellant argues that the trial court erred in finding the evidence sufficient to convict her of driving while having a suspended license "because the testimony of Commonwealth witness Paul Welch that [appellant] was driving was inherently incredible." This contention is also without merit.

"The trier of fact is the sole judge of the credibility of the witnesses, unless, as a matter of law, the testimony is inherently incredible." Juniper v. Commonwealth, 271 Va. 362, 415, 626 S.E.2d 383, 417 (2006) (quoting Walker v. Commonwealth, 258 Va. 54, 70-71, 515 S.E.2d 565, 575 (1999)). "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).

Appellant's mere conjecture that "the sun would necessarily be to [Welch's] back and glaring in his rear view mirror" and that "financial considerations of a potential civil law suit colored and clouded his perceptions," without more, is hardly enough to justify the conclusion that Welch's testimony was inherently incredible. To the contrary, the facts at bar indicate that Welch was a singularly credible witness. This Court defers to the trial court's findings of fact, see Williams, 278 Va. at 193, 677 S.E.2d at 282, and the trial court here accorded Welch's testimony "great weight." It specifically noted the "great deal of detail in his recollection," and observed that "[o]n cross-examination he was able to give even more details." The trial court concluded that "I just don't find anything in cross-examination that really attacked or that took away from Mr. Welch's credibility." Accordingly, because the trial court's decision was thus rooted in credible evidence and was not plainly wrong, this Court affirms appellant's conviction for driving on a suspended license.

## IV. CONCLUSION

For the foregoing reasons, this Court affirms appellant's convictions for perjury and driving on a suspended license, third offense.

Affirmed.